IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN WHITE, #125870, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:13-cv-00132-WHA |
| | ) | [WO] |
| | ) | |
| B. JONES and R. GIBSON, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Plaintiff Alvin White, an inmate of the Childersburg Community Based Facility/Community Work Center, brings claims of false arrest, false imprisonment, and malicious prosecution in his amended complaint against defendants B. Jones and R. Gibson.[1] *Doc. No. 5.* Plaintiff does not clarify in his pleadings whether he sues Defendants in their official capacities, individual capacities, or both. *Doc. Nos. 1, 5.* In the interest of fairness and completeness the court will presume that Plaintiff brings claims against Defendants in both their individual and official capacities.

Defendants filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, Defendants deny Plaintiff's allegations. Upon consideration of the evidentiary materials filed in support thereof, the court construes

---

[1]Plaintiff narrowed his claims and defendants in his motion to amend the complaint, *Doc. No. 5,* which the court granted. *Doc. No. 6.*

Defendants' report as a motion for summary judgment, and upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that Defendants' motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflects the stylistic change in the current rule).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may ... grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it ... ."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice ... ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must

do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on his claims against the defendant. *Matsushita*, 475 U.S. at 587.

### A. Summary of Material Facts

The court views the evidence in the light most favorable to Plaintiff, the nonmoving party. Defendants are officers with the City of Opelika, Alabama, Police Department. *Jones Aff.- Doc. No. 12-1* at 1; *Gibson Aff. - Doc. No. 12-2* at 1.

On January 18, 2012, at about 10:00 p.m. or 11:00 p.m., Defendants were patrolling Opelika in separate squad cars and responded to a call converning shots fired in the 200 block of Jeter Avenue in Opelika. *Jones Aff.* at 1; *Gibson Aff.* at 1. Jones was close to the

scene, and he arrived first. *Jones Aff.* at 1. It was raining heavily, and Jones saw a man and woman walking down the side of the road, on the passenger side of Jones's police car. *Id.* Jones now knows that the man he saw was the Plaintiff. *Id.* Jones got out of the car and started walking down the driver's side of the car toward the rear. *Id.* Plaintiff and the female continued walking on the opposite side of the car, in the same direction. *Id.* Jones asked if they heard or knew anything about shots being fired, and Plaintiff said, in effect, "'they are shooting like hell' over there." *Id.* at 2. When Jones arrived at the back of his car, he began crossing over to the side where Plaintiff and the female were. *Id.*

At this point, the parties' versions of the events diverge. Jones alleges:

> When I arrived at the back of the police car and began crossing over to the other side to talk with the two, I noticed White took his right hand out of his right coat pocket. I saw the butt of a gun hanging out of the coat. I asked White what was in his pocket. White then put his right hand behind into his right coat pocket, and removed the gun but did not point it at me. He had his hand cupped around as if he were trying to conceal the gun. He then extended his arm a little bit out to the right side and threw the gun sharply sideways off to the left into the dark bushes and trees lining the side of the street. I then backed up and put my hand on my holstered gun. I immediately approached White and using my hands on his shoulders, pushed him to the ground to secure him.
>
> Officer Gibson arrived and helped secure White. I went and found the gun that was thrown in the bushes. I placed it on the hood of the police car and unloaded it. I asked White for a permit.
>
> I checked with dispatch and was advised that White had no permit and was a parolee. White insisted the pistol was not his and he did not understand why he was put on the ground for nothing. I then placed White under arrest and drove him to the Lee County Jail, where he admitted to having consumed a couple of beers. I also swore to an Affidavit and Warrant of Arrest.

*Id.*[2] Jones swears that he did not know Plaintiff before the incident and did not know Plaintiff was a parolee. *Id.* Jones avers that he arrested Plaintiff because Jones personally observed Plaintiff with a pistol that Plaintiff threw into the bushes and Jones retrieved, and then Jones determined that Plaintiff did not have a gun permit and arrested him for carrying a pistol without a permit. *Id.* at 2-3.

Gibson avers that he also responded to a call of shots fired in the 200 block of Jeter Avenue in Opelika. *Gibson Aff.* at 1. Gibson states that he stopped his car about thirty to fifty feet behind Jones's car because Gibson "saw a female walking down the road at a good clip as Detective Jones was talking to a male." *Id.* Gibson stopped his car next to the female to talk with her. *Id.* As Gibson was getting out of his car, he saw Jones take Plaintiff to the ground, and Gibson immediately went to assist Jones. *Id.* The female continued walking away, and she was not found. *Id.* Plaintiff refused to identify her. *Id.* Plaintiff denied the gun was his; after it was determined that Plaintiff did not have a permit, Gibson says that Jones arrested Plaintiff. *Id.* Jones and Plaintiff then left, and Gibson resumed patrolling. *Id.* at 2. Gibson avers that, to his knowledge, it was the first time he ever encountered Plaintiff, and he did not know Plaintiff was on parole. *Id.*

Plaintiff, in contrast, states in his verified Complaint[3] that he "did nothing in the

---

[2]Jones states that a copy of the Affidavit and Warrant of Arrest are attached to his Affidavit, but neither was filed. The court treats the accompanying Affidavit and Warrant of Arrest as asserting the same facts that Jones asserts in his affidavit before this court; therefore, the court does not ask that Jones supplement the record.

[3]Plaintiff's original complaint was sworn under penalty of perjury. *Doc. No. 1*, at 4. Although Plaintiff filed an amended complaint, the amended complaint was not sworn under penalty of perjury. *Doc.*

presence of any Officer, and had nothing under his control to which gave any indicia that [Plaintiff] had fired any gun shots." *Doc. No. 1* at 5. Plaintiff states that both officers asked Plaintiff his name, he complied, and "there was nothing under [Plaintiff's] control which was under any form as a gun. [Plaintiff] did not throw any object which appeared to have been a gun in the presence of any Officer." *Id.*

Plaintiff maintains that he was arrested after it was made known that he was a parolee. *Id.* He states he was arrested based on false statements, and that charges were fabricated against him after officers learned that Plaintiff was on parole. *Id.* at 5-7. Plaintiff does not allege that either Defendant was personally responsible for Plaintiff's custody after he was arrested and charged.

Defendants deny making any false statements regarding the incidents involving Plaintiff on January 18, 2012. *Jones Aff.* at 3; *Gibson Aff.* at 2. Gibson states that he himself did not actually arrest Plaintiff. *Gibson Aff.* at 1-2. Jones states that he did not arrest Plaintiff because he was on parole, but rather because he saw Plaintiff throw a gun in the bushes, and Jones recovered the gun. *Jones Aff.* at 2-3.

Plaintiff was charged with possession of a pistol without a permit. He was convicted

---

*No. 5.* Plaintiff's response to Defendants' report also did not include an affidavit or statement that it was sworn under penalty of perjury. *Doc. No. 21.* The court cautioned Plaintiff that he could not rely on unsworn statements or pleadings. *Doc. No. 16* at 2. Plaintiff's unsworn statements will not be considered in deciding Defendants' summary judgment motion. *See* 28 U.S.C. § 1746; *see also Holloman v. Jacksonville Housing Auth.*, No. 06-10108, 2007 WL 245555 at *2 (11th Cir. 2007) (per curiam) ("unsworn statements, even from *pro se* parties, should not be consider[ed] in determining the propriety of summary judgment") (quotation marks and citation omitted). However, the court will consider Plaintiff's sworn statements in the original, verified complaint.

in Municipal Court, and he appealed to the Circuit Court, which ordered a jury trial. *Jones Aff.* at 1. A jury found Plaintiff not guilty on June 27, 2012. *Id.*; *Doc. No. 1-1*. Plaintiff asserts in his amended complaint that his parole was nevertheless revoked, and he was returned to prison, based on the testimony of Defendants regarding the events of January 18, 2012. *Doc. No. 5* at 2. Defendants state that they testified truthfully regarding the incident in Municipal Court, at the jury trial, and at the parole hearing, and that neither knew when they left the parole hearing whether Plaintiff's parole would be revoked. *Jones Aff.* at 3; *Gibson Aff.* at 2. Plaintiff remains in the custody of the Alabama Department of Corrections. *Doc. No. 1* at 9.

## B. *Heck v. Humphrey*

The court first observes that, although neither party addresses the issue, it appears that Plaintiff is barred from seeking damages under § 1983 by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87. Under *Heck*, the relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his [confinement]." *Id.* at 487; *see also Edwards*

8

*v. Balisok*, 520 U.S. 641, 645-46 (1997) (extending *Heck* to prisoner's claims for declaratory relief, injunctive relief, and damages resulting from alleged unlawful loss of prison good time); *Littles v. Board of Pardons and Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (applying *Heck* to revocation of parole). For example, if a plaintiff is convicted for resisting arrest that is defined as preventing an officer from effecting a lawful arrest, then *Heck* would bar the plaintiff's suit against the officer seeking damages for an unreasonable seizure because success on the plaintiff's claim would negate an element of the offense. *E.g.*, *Hughes v. Lott*, 350 F.3d 1157, 1160 & 1160 n.2 (11th Cir. 2003) (citing *Heck*, 512 U.S. at 487 n.6). If, on the other hand, under doctrines such as inevitable discovery or harmless error, an illegal arrest may be followed by a valid conviction, a successful § 1983 suit for the alleged Fourth Amendment seizure violation would not necessarily imply the invalidity of the conviction and, as a result, *Heck* would not bar the suit. *Id.* at 1160 (11th Cir. 2003) (quoting *Heck*, 512 U.S. at 487 n.7). To determine whether success on a claim would necessarily imply the invalidity of a judgment, "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Id.* at 1160 n.2.

Here, the factual basis for Plaintiff's § 1983 claim of unlawful arrest is so intertwined with the arrest itself that success on the § 1983 claim inevitably would undermine Plaintiff's parole revocation and consequent incarceration. Plaintiff claims that the basis for the arrest was Jones's false observation that Plaintiff had a pistol, and Plaintiff represents that his

revocation was based on Jones's conclusion that Plaintiff possessed a pistol. It is impossible to separate the officer's conduct at the arrest with the ultimate decision that resulted in Plaintiff's parole revocation and incarceration. Based on the facts as set out in the summary judgment record, if the arrest were illegal, then the parole revocation was illegal. Plaintiff's success on his claim of unreasonable arrest would negate an element of the offense that led to his parole revocation; consequently, *Heck* requires Plaintiff to show that his revocation has been invalidated. *See Heck*, 512 U.S. at 487 n.6. Plaintiff has not presented evidence that his parole revocation has been invalidated, and he makes no argument that he cannot invalidate his parole revocation and is exempt from the *Heck* bar[4]; therefore, his claims are barred by *Heck. E.g., Weaver v. Geiger*, 294 F. App'x 529, 533 (11th Cir. 2008) ("Weaver's conviction for possession with intent to distribute was premised on the methadone uncovered during the

---

[4]It is unclear whether there is an exception to *Heck* when a plaintiff is unable to invalidate a conviction or judgment. *Compare Heck*, 512 U.S. at 490 n.10 (noting the ruling "is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated") *with Spencer v. Kemna*, 523 U.S. 1, 21 (1998) (Souter, J., joined by O'Connor, Ginsburg, and Breyer) ("The better view . . . is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."). The Court of Appeals for the Eleventh Circuit has not expressly ruled on the issue. *See Reilly v. Herrera*, 622 F. App'x 832, 834 (11th Cir. 2015) (discussing the potential exception to the "favorable-termination requirement," recognizing it has not explicitly ruled on the issue, and declining to do so because "Mr. Reilly's case does not fit within the framework of scenarios mentioned in Justice Souter's *Spencer* concurrence), *pet'n cert. filed*, No. 15-7775 (Jan. 19, 2016); *compare Christy v. Sheriff of Palm Beach Cnty., Fla.,* 288 F. App'x 658, 666 (11th Cir. 2008) ("with respect to [plaintiff's] assertion that his lawsuit must be allowed to proceed because habeas relief is unavailable, we have expressly declined to consider that issue in an opinion where the § 1983 action is otherwise barred under *Heck* [because it would necessarily undermine his underlying conviction]") (citations omitted), *with McClish v. Nugent*, 483 F.3d 1231, 1252 n.19 (11th Cir. 2007)("If *Heck* only bars § 1983 claims when the alternative remedy of habeas corpus is available, then *Heck* has no application to Holmberg's claim. Holmberg was never in custody at all, and the remedy of habeas corpus is not currently available to him."); *see also Barnes v. City of Dothan*, 842 F. Supp. 2d 1332, 1336-68 (M.D. Ala. 2012) (discussing split of authority).

search permitted by the allegedly improper warrant. Accordingly, if Weaver was successful in his claim, it would cast doubt on the validity of an essential element of the offense for which he was found guilty.").

### C. Qualified Immunity

Even assuming, arguendo, that Plaintiff's success on his § 1983 claims would not imply the invalidity of his parole revocation, or that *Heck* is inapplicable, Defendants are entitled to qualified immunity from Plaintiff's claims for money damages. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citations omitted) (alteration added). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants

are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotation marks and citations omitted).

### 1. Federal Claims

Plaintiff raises federal claims of false arrest, false imprisonment, and malicious prosecution. *Doc. No. 5* at 3. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, guarantees the right against unreasonable searches and seizures. U.S. Cont. Amend. IV; *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "It is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013) (quotation marks and citation omitted). "Probable cause exists when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 978 (quoting *Lee*, 284 F.3d at 1195

(internal quotation marks omitted)).  "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." *Id.* at 977-78 (quotation marks and citation omitted). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735.

A § 1983 false imprisonment claim arises under the Due Process Clause of the Fourteenth Amendment. *Cannon v. Macon Cnty*, 1 F.3d 1558, 1562-63 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (11th Cir. 1994); *see also Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). A due process claim under these circumstances requires showing common law false imprisonment along with Defendant's deliberate indifference to Plaintiff's "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Campbell*, 586 F.3d at 840 (quotation marks and citations omitted). Deliberate indifference means that Defendant "had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence." *Id.* (citation omitted).

For a Fourth Amendment malicious prosecution claim, "its elements and whether they are met ultimately are controlled by federal law." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)).

Under federal law:

> To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir.2004); *Wood*, 323 F.3d at 881. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882.

*Grider*, 618 F.3d at 1256 (footnote omitted).

### 2. Analysis

As relevant to Plaintiff's case, under Alabama law, "no person shall carry a pistol ... concealed on or about his or her person without a permit issued under Section 13A-11-75(a)(1) or recognized under Section 13A-11-85." Ala. Code § 13A-11-73 (1975, as amended by Act 2013-283, p. 938, § 2). The gravamen of Plaintiff's complaint is that he was falsely accused of having a pistol without a permit because Defendants knew that Plaintiff was a parolee. *Doc. No. 5* at 2 ("Jones, and Gibson both caused White to be placed under false imprisonment for a false arrest, made with malice all because White was on parole, and was considered to be an x-felon."). The problem with Plaintiff's version of the events is that Defendants aver they did not know who Plaintiff was until *after* he was subdued for allegedly throwing the gun, and *after* the gun was recovered from the bushes. Plaintiff makes conclusory statements that Defendants knew who Plaintiff was, but Plaintiff provides no facts suggesting how Defendants would have known Plaintiff was a parolee

14

when Plaintiff was first stopped. In response to Defendants' affidavits, Plaintiff provides no affidavit or other evidence admissible at trial to refute Defendants' sworn statements that they did not know Plaintiff when they encountered him and did not know he was on parole. Plaintiff's self-serving, conclusory statements in his verified complaint are insufficient to create a genuine question of fact as to whether Defendants knew who Plaintiff was when they first encountered him. *See Holifield*, 115 F.3d at 1564 n.6; *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) ("mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment"); *see also Larken v. Perkins*, 22 F. App'x 114, 115 n.* (4th Cir. 2001) (noting that the district court properly found a party's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation . . . insufficient to stave off summary judgment").

Viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences from the evidence in Plaintiff's favor, a reasonable officer in each of the Defendants' circumstances would not have known who Plaintiff was when they first approached Plaintiff and seized him on January 18, 2012. Consequently, no reasonable juror could find that either Defendant initially seized Plaintiff because they knew he was on parole. Furthermore, although Plaintiff insists he did have a gun and did not throw anything into the bushes, the court concludes that Jones had arguable probable cause to arrest Plaintiff for possession of a pistol without a permit. The facts before Jones included the recent report of shots fired in the area where Plaintiff was walking, the lateness of the hour, the heavy rain,

15

Jones's perception that Plaintiff had a pistol and threw it in the bushes, the recovery of the pistol where Jones saw it thrown, and the dispatcher's information that Plaintiff did not have a permit for the pistol. Even if Jones were mistaken in thinking he saw a pistol, "the facts could have led a prudent officer to believe that reasonably trustworthy information established probable cause ... ." *Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906, 912 (11th Cir. 2015). Based on the totality of these circumstances, Jones had arguable probable cause to arrest Plaintiff; therefore, Jones is protected by qualified immunity. *See Wilkerson*, 736 F.3d at 978. These same facts support Jones's subsequent arrest warrant and prosecution of Plaintiff; consequently, Plaintiff's false imprisonment and malicious prosecution claims also fail. *See Pruitt v. Gillespie*, 625 F. App'x 374, 377 (11th Cir. 2015) (affirming Alabama district court finding that qualified immunity based on arguable probable cause to arrest also defeated malicious prosecution claim).

The court concludes that Gibson is also entitled to qualified immunity. It is undisputed that Gibson only assisted Jones after Jones began taking Plaintiff down, and that Gibson did not arrest Plaintiff or swear out a warrant against him. Gibson was responding to a call of shots fired in the area, he saw Jones taking Plaintiff to the ground, there was no evidence before Gibson suggesting that Jones's seizure of Plaintiff was inappropriate, Gibson merely assisted in securing Plaintiff, there is no allegation that Gibson or Jones used unreasonable or excessive force in securing Plaintiff, Gibson saw the gun recovered from the bushes, and he learned that Plaintiff was a parolee and did not have a permit for the pistol. A reasonable

16

officer with the same knowledge as Gibson could have believed he had arguable probable cause to believe that Jones needed legitimate help securing Plaintiff, and that Plaintiff was properly taken into custody for possessing a pistol without a permit. *Wilkerson*, 736 F.3d at 977-78. Consequently, Gibson is also entitled to qualified immunity on Plaintiff's claims.

Based on the undisputed record, no reasonable jury could find that Defendants knew Plaintiff was on parole when they encountered him, and Defendants had arguable probable cause to arrest Plaintiff. Defendants are entitled to qualified immunity on Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution.[5] Defendants are therefore entitled to judgment as a matter of law on the claims brought against them in their individual capacities.

### 3. Official Capacity Claims

To the extent that Plaintiff claims a constitutional violation against Defendants in their official capacities, the claim is effectively asserted against the City of Opelika, Defendants' employer. Because Plaintiff's claims against Defendants fail, he cannot maintain his suit against the City. *See Urbanique Prod. v. City of Montgomery*, 428 F. Supp. 2d 1193, 1225 (M.D. Ala. 2006) ("Municipal liability is foreclosed on Plaintiffs' Fourteenth Amendment claim against the City because the court has concluded that no underlying equal protection violation was committed by [Defendants] as to the events at issue in this case.") (citing

---

[5]Because the court concludes that Defendants are entitled to qualified immunity, it need not address Defendants' argument that Plaintiff's municipal court conviction, even though overturned, is *prima facie* evidence of probable cause. *Doc. No. 12* at 5.

*Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) ("An inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise."). In addition, Plaintiff fails to make any showing that Defendants acted pursuant to a custom or policy that constituted a violation of Plaintiff's constitutional rights. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Defendants are therefore due to be granted summary judgment on the claims brought against them in their official capacity.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment on behalf of the defendants be GRANTED;

2. This case be dismissed with prejudice in accordance with Federal Rule of Civil Procedure 56.

It is further

ORDERED that on or before March 8, 2016, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 23rd day of February, 2016.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE